UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE GARCIA, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10CV00795 (DJS) |
| | : | |
| OFFICER ERIK SIMONSON, | : | |
| OFFICER LUCIEN FRECHETTE, and | : | |
| OFFICER PAUL HUSSEY, | : | |
|     Defendants. | : | |

MEMORANDUM OF DECISION AND ORDER

In his amended complaint, the plaintiff, Bruce Garcia ("Garcia"), brings claims against

the defendants, Officer Erik Simonson ("Simonson"), Officer Lucien Frechette ("Frechette"), and

Officer Paul Hussey ("Hussey") (collectively, "the defendants"), pursuant to 42 U.S.C. § 1983 for

illegal search and seizure, false arrest, excessive force, and deliberate indifference and denial of

due process relating to an alleged denial of medical treatment. Garcia also raises state law tort

claims of assault and battery, as well as negligence. Pending before the Court is the defendants'

motion for summary judgment as to all claims in the amended complaint. For the reasons stated

below, the defendants' motion for summary judgment (doc. # 59) is granted.

FACTS

On August 7, 2013, the Court gave notice to the plaintiff Garcia that he had failed to file

an opposition to the defendants' motion for summary judgment as required by the Local Rules of

Civil Procedure and provided him with an additional fourteen days to file an opposition. The

Court further advised Garcia of the consequences of his failure to comply with the Local Rules.

Despite this notice, the plaintiff has not filed an opposition to the defendants' motion.

The Court has reviewed the defendants' submissions and is satisfied that their citations to

evidence in the record support the facts contained in the defendants' Local Rule 56(a)1 Statement. Because the plaintiff has failed to oppose the motion for summary judgment, those properly supported facts are deemed admitted and include the following:

At all times relevant to this action, each of the defendants was an officer within the Willimantic Police Department. On October 24, 2007, at approximately 12:30 a.m., Simonson, while on routine patrol, was forced to stop his marked police car in the middle of the roadway near the intersection of Ives Street and Pulaski Court in order to avoid striking the plaintiff and another individual named Luke Rector ("Rector") who were standing together in the middle of the roadway. Simonson knew the area of the intersection of Ives Road and Pulaski Court to be a high crime area known for drug activity. Garcia was known to all of the defendants as a drug user and someone who had been arrested by members of the Willimantic Police Department on numerous occasions for criminal violations, including drug possession and weapons charges.

Simonson exited his police car, requested backup from police dispatch, and made contact with Garcia and Rector.  As Simonson approached the two men, Garcia, who appeared to be nervous, attempted to walk away from him, stating, "I'm clean, I ain't got nothing." (Doc. # 59-1, at 2, ¶ 10). Simonson asked Garcia if he had anything that Simonson should know about; Garcia responded that he did not have anything that Simonson should know about. Garcia then consented to being searched by Simonson. When Simonson asked Garcia to interlock his fingers and put his hands behind his head, Garcia told him that he could not do that because his hand was broken. Simonson then noticed that Garcia was holding an object between two of his fingers on his right hand and asked Garcia to spread those fingers. When Garcia failed to spread his fingers, Simonson attempted to spread Garcia's fingers apart himself. At that point, Garcia pulled

-2-

his right hand away from Simonson, forced his right hand into his mouth, and swallowed the object he had been holding in his right hand.

Simonson and Frechette, who, along with Hussey, had arrived at the scene in response to Simonson's request for backup, gave repeated verbal commands to Garcia to stop what he was doing and told him that he was under arrest. Garcia ignored these commands and resisted the efforts of Simonson and Frechette to stop him from swallowing the object as well as their efforts to place him in handcuffs. At the time of this incident  Garcia was 6' 2" tall and weighed 207 pounds. Garcia was taken to the ground by Simonson and Frechette in an effort to restrain him. At this point, Hussey assisted Simonson and Frechette in their efforts to get Garcia's hands away from his mouth and behind his back. After the defendants managed to place Garcia in handcuffs, he was brought to a standing position. At that time, Simonson noticed that Garcia had a small cut on his forehead and an abrasion on his left shoulder. At no time did any of the defendants deny or hear  a request by Garcia for medical attention.

Simonson transported Garcia to police headquarters where he was charged with interfering with an officer, tampering with evidence, and disorderly conduct. These charges against Garcia were disposed of by the entry of a nolle prosequi that was conditioned on his agreement to plead guilty to other criminal charges that were pending against him. Garcia did not seek dismissal of the charges of interfering with an officer, tampering with evidence, and disorderly conduct.

DISCUSSION

A.  Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the
suit under the governing law.'" *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir. 2005)
(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  A dispute about a material
fact is "genuine," "if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party." *Liberty Lobby,* 477 U.S. at 248.

"When considering a motion for summary judgment, a court must construe the evidence
in the light most favorable to the nonmoving party, drawing all inferences in that party's favor."
*Jeffreys,* 426 F.3d at 553.  However, "[t]he mere existence of a scintilla of evidence in support of
the plaintiff's position will be insufficient . . . ." *Liberty Lobby,* 477 U.S. at 252.  The nonmoving
party "must do more than simply show that there is some metaphysical doubt as to the material
facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).
"[A]fter adequate time for discovery and upon motion," summary judgment is appropriate
"against a party who fails to make a showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). On the basis of the facts deemed admitted, it
is clear that the defendants in this action are entitled to summary judgment on all claims.

B.  Illegal Search and Seizure

"The Fourth Amendment is not offended by a warrantless, suspicionless search to which a

suspect consents." *Winfield v. Trottier*, 710 F.3d 49, 54 (2d Cir. 2013). Totally apart from a consideration of whether the defendant Simonson possessed reasonable suspicion that would have justified a brief detention of Garcia, the undisputed facts[1] establish that Garcia consented to the search in question. Consequently, Garcia's claims of illegal search and seizure fail.

C.  False Arrest

"[F]avorable termination is an element of a section 1983 claim sounding in false imprisonment or false arrest" in the context of Connecticut law. *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (internal quotation marks omitted). "In Connecticut, 'termination in favor of the plaintiff' has been interpreted as termination without consideration." *Pizarro v. Kasperzyk*, 596 F. Supp. 2d 314, 318 (D. Conn. 2009). While the entry of a nolle may permit a plaintiff to satisfy the favorable termination requirement if it constitutes an abandonment of the prosecution without any consideration from the defendant, the entry of a nolle does not satisfy the favorable termination requirement "if some charges were nolled in exchange for a guilty plea to another offense . . . ." *Holman v. Cascio*, 390 F. Supp. 2d 120, 124 (D. Conn. 2005).

Here, the charges against Garcia resulting from his arrest on October 24, 2007, were disposed of by the entry of a nolle that was conditioned on his agreement to plead guilty to other criminal charges that were pending against him. Consequently, Garcia cannot satisfy the favorable termination requirement that is a necessary element of a false arrest claim pursuant to 42 U.S.C. § 1983 and his false arrest claims fail.

_____

[1]Since the plaintiff, having been provided with notice of the consequences of failing to respond to the motion for summary judgment, failed to respond to the defendants' motion, "the Court may accept the truth of defendants' [properly supported] factual allegations, and determine whether defendants are entitled to summary judgment." *Sheils v. Jordan*, 841 F. Supp. 2d 727, 729 (W.D.N.Y. 2012).

-5-

D.  Excessive Force

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Whether the force used in a given instance is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

In this instance, Garcia, who is a large man, was actively resisting arrest and was known to have been previously arrested for drug possession and on weapons charges. He was taken to the ground by the officers in an effort to restrain him. Once Garcia was place in handcuffs, he was brought back up to a standing position and then transported to police headquarters. During the course of his struggle with the police officers, Garcia sustained a small cut on his forehead and an abrasion on his left shoulder.  Based on these facts the Court finds that a reasonable jury could not conclude that the defendants used excessive force in violation of the Fourth Amendment in effecting Garcia's arrest. *See Massaro v. Jones*, 323 F. App'x 68, 70 (2d Cir. 2009) (in an instance where a criminal suspect who was pushed to ground and handcuffed sustained a head contusion, "a reasonable jury could not find by a preponderance of the evidence that the officers could not reasonably believe that the force used was an appropriate means of subduing a person whom they knew had previously been convicted of crimes involving weapons"). For this reason Garcia's excessive force claims fail.

-6-

E.  Deliberate Indifference/Denial of Due Process

"[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). "[T]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain" are factors that are "highly relevant to the inquiry into whether a given medical condition is a serious one." *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (internal quotation marks omitted). Deliberate indifference to a serious medical condition requires "an awareness of the condition and a general knowledge that the [individual] was at risk, which the officer then made a choice to disregard, knowingly or recklessly putting [him] in peril." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 410 (E.D.N.Y. 2011).

The facts before the Court would not support a finding of deliberate indifference on the part of any defendant or even that Garcia had a serious medical condition. After Garcia was placed in handcuffs and brought back to a standing position, he was observed to have a small cut on his forehead and an abrasion on his left shoulder. At no time did any of the defendants deny or hear a request by Garcia for medical attention, nor did he appear to need any immediate medical attention. No reasonable jury could conclude that Garcia's due process rights had been violated on the basis of a denial of medical treatment and his claims in that respect also fail.

### F.  Assault and Battery

"So closely tied are state and federal issues in excessive force cases that the Connecticut Supreme Court has held that an award of damages in a § 1983 action collaterally estops the plaintiff from recovering damages in a subsequent state court lawsuit." *Miller v. Lovett*, 879 F.2d 1066, 1072 (2d Cir. 1989). The standard for liability as to both a federal excessive force claim and a state assault and battery claim is "reasonableness." *Id.* at 1073. The Court has already determined in connection with the plaintiff's excessive force claims that the defendants did not use unreasonable force in effecting Garcia's arrest. Therefore, his assault and battery claims must likewise fail.

### G.  Negligence

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Sic v. Nunan*, 307 Conn. 399, 406 (2012). There are no facts that would support a finding by a reasonable jury that any of the defendants breached any duty owed to the plaintiff. Additionally, since the defendants' actions were undertaken in the performance of their duties and were discretionary in nature, the defendants are immune from liability for negligence. *See Violano v. Fernandez*, 280 Conn. 310, 318 (2006) ("Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society."). For these reasons, Garcia's negligence claims fail.

CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (**doc. # 59**) is

**GRANTED**. The Clerk is directed to close the case.

**SO ORDERED** this ²ⁿᵈ day of October,  2013.

_____ /s/ DJS_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE